LILLIAN KUSHINSKY, administratrix of the estate of Rose Kaufman, deceased, complainant-respondent,

*v.*

HERMAN J. SAMUELSON and PINE REALTY COMPANY, INC., defendants-appellants.

[Argued May 24th, 1948.   Decided September 3d, 1948.]

*Messrs. McGlynn, Weintraub & Stein* (*Mr. Joseph Wein- traub,* of counsel), for the appellants.

*Mr. Albert Kushinsky* (*Mr. Howard Ewart,* of counsel), for the respondent.

The opinion of the court was delivered by

HEHER, J.

The appeal is from a final decree of foreclosure of a mort- gage covering lands in Berkeley Township, Ocean County, in the principal sum of $24,000, made August 21st, 1920, by Samuel Kaufman and Herman J. Samuelson, co-partners trading as United Feed Company, to Rose Kaufman, Sam- uel's wife, payable three years from date, with interest at 6% in semi-annual installments, and from an order dismiss- ing defendants' petition to reopen the proofs and for a rehearing, interposed before the entry of the final decree. The finding was that there was no payment whatever upon the mortgage, either for principal or interest; the amount decreed to be due, for principal and interest, was $47,584.

On October 31st, 1931, Samuel Kaufman conveyed his one- half interest in the mortgaged lands to his co-owner, Samuel- son; and on February 16th, 1946, Samuelson conveyed the lands to Pine Realty Company, Inc., a corporation wholly owned by him, where the title now rests.

Complainant is the administratrix of Rose Kaufman, ap- pointed on March 18th, 1946, although the intestate, her mother, died some 17 years before. Upon Rose's death, her husband, Samuel, one of the mortgagors, and his children, of whom one, Henrietta, was the wife of the co-mortgagor, Samuelson, succeeded to such interest as she had in the mort- gage; and Samuelson succeeded to the interest of his wife, Henrietta, upon her death in November, 1940.

The defenses are (a) payment; (b) presumption of pay- ment from lapse of time; (c) the bar of the statute of limi- tations for failure of action with 20 years from the accrual of the cause of action (*R. S. 2:24-12; 2:24-13; Comp. Stat. 1910 p. 3169* §§ *16, 17*); and (d) laches. By replication,

complainant pleaded payments on account of principal in 1933 and 1934 aggregating $2,910, and payments of interest up to the time of the death of Rose Kaufman, the mortgagee, on October 23d, 1929. Defendants, on the other hand, adduced evidence tending to show that the mortgage was fully satisfied through the application of credits accruing from the adjustment of allied partnership affairs effected on March 31st, 1924. The evidence was rejected as incredible. Neither the bond nor the mortgage was produced, nor was their non-production explained.

The learned Vice-Chancellor concluded that payment, "when pleaded in answer to a bill of foreclosure, is an affirmative defense and the burden of proving payment is on him who asserts it," and that the burden has not been sustained here. He invoked the case of *Wilson* v. *Stevens, 105 N. J. Eq. 377.*

In a foreclosure suit the burden of proof of payment or other satisfaction of the mortgage ordinarily rests upon him who affirms it by way of defense. The possession of the mortgage and the obligation which it purports to secure is deemed *prima facie* evidence of the nonpayment of the mortgage debt. *Ocean County National Bank* v. *Stillwell, 123 N. J. Eq. 337; Maddock* v. *Connolly, 82 N. J. Eq. 609; Bower* v. *Bower, 78 N. J. Law 387.* The possession of the instruments evidencing the obligation raises a presumption of nonpayment. The subject-matter of a presumption is considered as a fact established by inference until disproved by evidence or a stronger presumption, so as to place upon the adversary party, as a legal consequence, the duty of going forward with the evidence on pain of failure. It is this legal consequence of a presumption that distinguishes it from a mere inference. *Meltzer* v. *Division of Tax Appeals, 134 N. J. Law 510.* Possession of the evidences of indebtedness gives rise to a specific logical and reasonable inference of such inherent probative force as to merit the category of a presumption, in the apportionment of the burden of proof—a fact to be deemed proved until disproved. *Ocean County National Bank* v. *Stillwell, supra; Conlon* v. *Hornstra, 82 N. J. Law 355.* It is this presumption that the adversary party must overcome

by proof on pain of an adverse decree. *E· converso,* it would seem.that the want of possession of the instruments of title, unexplained by evidence consistent with the continued subsistence of the obligation, averts the presumption and disentitles the party to a decree of foreclosure for failure of a *prima facie* case. While the case at hand is not factually similar to *Bower* v. *Bower, supra,* where there was a cancellation of the mortgage, the principle is applicable, for it is the possession of the instruments evidencing the debt that constitutes *prima facie* evidence of nonpayment. *Maddock* v. *Connolly, supra.* One does not ordinarily pay a mortgage debt and leave the mortgage in the hands of the mortgagee. It has been held that the nonproduction of the instrument evidencing the obligation, coupled with the lapse of time and other circumstances, may afford conclusive evidence of payment. *Lammer* v. *Stoddard, 103 N. Y. 676; 9 N. E. Rep. 328.* Thus, the existence *vel non* of a presumption as to payment may depend upon the particular circumstances.

Reverting to the instant case, we are inclined to the view that the circumstances attending the nonproduction of the bond and mortgage (apart from the defense of the statute of limitations) reasonably give rise to a rebuttable presumption of payment of the obligation. · But we would reserve the question until all the evidence is in; and this brings us to the second leg of the appeal, *i. e.,* the propriety of the denial of defendants' motion for leave to supplement the evidence.

We should appraise the proofs adduced and determine the facts in the light of the correct rule touching the apportionment of the burden of proof were it not for the unwarranted exclusion of the evidence thus proffered. In so doing, the Vice-Chancellor invoked the rule applied in *Kirschbaum* v. *Kirschbaum, 92 N. J. Eq. 7.*

We do not think that course serves the ends of justice. We shall not outline the evidence thus tendered. It suffices to say that it is in substantial part pertinent to the issue and is receivable in the exercise of what we conceive to be a sound discretion. The factual issues are involved, due in no small part to the mutual trust and confidence and informality that characterized the family relation and business affairs until

death and the changes of circumstances wrought by time gave rise to disagreements and bitterness that now even more becloud the transaction. The Vice-Chancellor "reluctantly" advised the decree of foreclosure. He had "certain misgivings as to the correctness" of his decision; he did "not feel the strongest confidence" that he had "reached the truth," of the case; he found it "very difficult to feel any degree of assurance, after a most laborious search for the truth," that he had "been successful in finding it," adopting the language of Chancellor Williamson in *Robinson* v. *Urquhart, 12 N. J. Eq. 515.* He concluded thus: He had "an abiding conviction that had Henrietta Samuelson lived and the Kaufman family relations as they existed during her lifetime continued, this mortgage would never have been called. But after her death, Mr. Samuelson grasped for too much, and his institution of a suit at law against Mr. Kaufman for the cancellation of another mortgage brought retaliation in the form of the present foreclosure action. The motive for the enforcement of a legal right is immaterial. What might have been is, therefore, of no importance in so far as my decision is concerned." Evidence that conceivably might have resolved these doubts and perplexities should not have been rejected. The application was made one month after the Vice-Chancellor filed his unreported conclusions, and before the entry of the final decree. The final decree was not entered until sometime after the denial of the motion.

We have not considered the validity of the defenses of the statute of limitations, presumption of payment from lapse of time alone, and laches. These may well await the presentation of the evidence in full.

The decree and order under review are reversed; and the cause is remanded for further proceedings in conformity with this opinion, costs to abide the event.

*For affirmance*—THE CHIEF-JUSTICE, WACHENFELD, BURLING, JJ. 3.

*For reversal*—BODINE, DONGES, HEHER, COLIE, EASTWOOD, JACOBS, WELLS, DILL, FREUND, McLEAN, JJ. 10.