38 N.J. Super. 454 (1955)
119 A.2d 780
CHARLES L. GUERIN, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF ROSE M. GALLAGHER, DECEASED, PLAINTIFF,
v.
ROSE A. CASSIDY AND HIS EXCELLENCY, THE MOST REVEREND JOHN F. O'HARA, C.S.C., ARCHBISHOP OF PHILADELPHIA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 20, 1955.
*457 Mr. Augustine A. Repetto, for plaintiff (Messrs. Bolte & Repetto, attorneys).
Mr. Clarence Blitz, for defendant Rose A. Cassidy.
Mr. Albert A.F. McGee, for defendant The Most Reverend John F. O'Hara, C.S.C., Archbishop of Philadelphia.
HANEMAN, J.S.C.
The plaintiff herein seeks instructions concerning the last will and testament of Rose M. Gallagher, deceased, and a judgment against defendant Cassidy for an alleged debt due the estate of Rose M. Gallagher from the defendant Cassidy.
The facts and conclusions in connection herewith are as follows: On August 11, 1953 Rose M. Gallagher, then 89 years of age, died a resident of Atlantic County, leaving a last will and testament, which was duly admitted to probate by the surrogate of said county. The said will provided, inter alia, as follows:
"Fifth: I give and bequeath to the Holy Cross Cemetery Company the sum of Five Hundred Dollars ($500.00) free of tax, for the perpetual maintenance and care of my grave."
The deceased did not own a burial plot in the designated cemetery at the time of her death.
*458 For some time prior to her death Rose M. Gallagher, a member of the Roman Catholic Church, had resided with the defendant Cassidy, who took charge of her funeral before the discovery of her will. Interment was made in the Laurel Memorial Park Cemetery in Atlantic County, New Jersey, a non-sectarian cemetery maintaining a perpetual care fund, in the presence of priests of the Roman Catholic Church, who blessed the grave at the time of burial. Holy Cross Cemetery is a cemetery located in Philadelphia, Pennsylvania, consecrated for the burial of members of the Roman Catholic faith alone. At the time of the burial of Rose M. Gallagher there was no similarly consecrated cemetery in Atlantic County. Burials had been made of Roman Catholics prior to and at the time of the burial of this decedent at Laurel Memorial Park in a similar manner, which burials were permitted by the ecclesiastical law of the Roman Catholic Church.
The total estate, absent the claim against the defendant Cassidy, hereafter referred to, amounted to approximately $5,000. The plaintiff here desires instructions as to whether the body of the deceased should be reburied in the Holy Cross Cemetery. The cost of disinterment, acquisition of a burial lot, and reburial would amount to approximately $650.
It is to be noted that the original burial did not violate any ecclesiastical law of the Roman Catholic Church. The ground was considered hallowed and consecrated ground at the time of the burial because of the blessing of the priest in attendance. Although it must be recognized that the wishes or directions of a deceased as to his interment are entitled to respectful consideration and are allowed great weight, such directions, even though contained in a will, are not considered testamentary in nature, since there is no property right in a dead body, in the ordinary sense. After interment, a body is in the custody of the law and removal is subject to the jurisdiction of this court. Such power, however, should not be exercised unless it be clearly shown that good cause and urgent necessity for such action exists *459 Fidelity Union Trust Co. v. Heller, 16 N.J. Super. 285 (Ch. Div. 1951); Friedman v. Gomel Chesed Hebrew Cemetery Assn., 22 N.J. Super. 544 (Ch. Div. 1952).
In the light of the fact that the deceased is already buried in ground which, according to the ecclesiastical law and doctrinaire of her church, is consecrated and hallowed, and the cost incident to the removal to another cemetery would be excessive when compared with the size of the estate, there appears to be no good cause or urgent necessity to direct such removal. The executor is therefore directed not to so remove.
The bequest of $500 to Holy Cross Cemetery was made upon the contemplation of interment in that cemetery, and for the perpetual maintenance and care of the deceased's grave therein. The bequest must therefore fail and the executor is directed not to make such payment.
Subsequent to the death of Rose M. Gallagher the executor discovered the following paper writing in her safe deposit box at the Philadelphia Saving Fund Society, Philadelphia, Pennsylvania, which plaintiff offered as an exhibit:
"Received of Rose M. Gallagher $3,000  to be paid as I can, and interest to be five per cent. $180.00 per year on balance.
This also certifies should anything happen to me  Rose A. Gallagher takes over until her money is paid.
 Rose A. Cassidy
 Atlantic City, N.J.
 Nov. 18th, 1946."
The defendant offered herself as a witness and attempted to testify concerning her transactions with the deceased. The objection to this testimony, under N.J.S. 2A:81-2 was sustained. However, she offered the following writing, which was admitted:
"1948. Rose M. Gallagher. I wish to says at this time if any thing would happen to me that you can do what you think is right with the moneys I loaned to you and no one has any right to it for masses or any ways you wish as I am of sound mind and this is my best wish as God will gide you any ways. Best wishes.
Rose M. Gallagher, 14 So. Georgia Ave., Atlantic City. October 15, 1948."
*460 In addition, William Surran, a member of the bar of this State, testified that in a conversation with the deceased concerning the proposed preparation of a will, some time in 1953, she advised, in answer to the propounded question, that no one was indebted to her.
The plaintiff seeks recovery under the above facts, which recovery is resisted by the defendant Cassidy on the grounds that (1) plaintiff has not established a prima facie case; (2) the debt is presumed paid; (3) the writing purporting to be evidence of the debt is ambiguous and unenforceable, and (4) the deceased released the said defendant of any obligation to pay.
The possession of the evidence of indebtedness by the deceased gave rise to a presumption of non-payment. Payment is essentially an affirmative defense and the burden of proof is on him who pleads it. The admission of the above referred to writing signed by the defendant Cassidy established a prima facie case. Federal Deposit Insurance Corp. v. Miller, 130 N.J.L. 626 (E. & A. 1943); Kushinsky v. Samuelson, 142 N.J. Eq. 729 (E. & A. 1948).
Although the instrument here sued upon is inartistically and inartificially prepared, it is not so ambiguous as to foreclose a recovery. In effect, it is a promise to pay a sum certain, when the obligor is financially able to pay. The statute of limitations does not commence to run until a cause of action arises. Until the debt was due and payable, no cause of action had accrued. Weinstein v. Blanchard, 109 N.J.L. 332 (E. & A. 1932); Krauss v. Brooklyn Fire Ins. Co., 130 N.J.L. 300 (E. & A. 1943). Since the debt is not due until the defendant is capable of paying, the statute does not commence to run until at least that time. There is no proof which would warrant the conclusion that a period of six years has elapsed since the debt became due, and this defense is held to be without merit.
The instrument to which defendant refers as evidencing a renunciation by the deceased of any claim is either (1) an attempted gift or (2) a release. As a gift, it must fail, since one of the essential ingredients of a gift, *461 i.e., a delivery of the subject matter of the gift, is lacking, the obligation having remained in the custody of the deceased in her safe deposit box. This follows whether this was an inter vivos gift or a gift causa mortis, as urged by the defendant. Foster v. Reiss, 18 N.J. 41 (1955). As a release it must fail, as the instrument is not under seal and there was no proof of any valuable consideration therefor. Peter W. Kero, Inc. v. Terminal Construction Corp., 6 N.J. 361 (1951).
However, the contract here contains, as above noted, a conditional promise to pay rather than an absolute promise. It provides for payment "as I can" which is tantamount to a promise to pay "when able." In the event of such a promise, a plaintiff, to succeed, must allege and prove the ability of the debtor to pay in accordance with the terms of the contract. There is here absent any such allegation or proof. Plaintiff must therefore, at this posture, fail on his demand for judgment. Parker v. Butterworth, 46 N.J.L. 244 (Sup. Ct. 1884); Lutz v. Ryno, 1 N.J. 363 (1949); City of Camden v. South Jersey Port Comm., 2 N.J. Super. 278 (Ch. Div. 1949), affirmed on this point, 4 N.J. 357 (1950).
Judgment will be entered accordingly.