**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2718-19

IN THE MATTER OF THE
ADMINISTRATION OF THE
ESTATE OF JOHN J.
McLAUGHLIN, deceased.

Argued September 7, 2021 – Decided September 17, 2021

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. 12-000298.

Raymond A. Grimes argued the cause for appellant Rita Loughlin.

Frederick C. Biehl, III, argued the cause for respondents Licia McLaughlin-Zegar and Jamie McLaughlin Ubaldi (Soriano, Henkel, Biehl & Matthews, PC, attorneys; Frederick C. Biehl, III, on the brief).

Marcia Polgar Zalewski argued the cause for respondent Estate of John J. McLaughlin.

PER CURIAM

Rita Loughlin appeals a February 5, 2020 order upholding a disputed settlement agreement between she and her sister Mary Lynch (the sisters),[1] and two nieces, Licia McLaughlin-Zegar and Jamie McLaughlin Ubaldi (the nieces), beneficiaries of the estate of John J. McLaughlin. Decedent was the brother and uncle of the parties and died intestate on January 31, 2012. The parties have since litigated the administration of his estate. A court-appointed administrator also joined in the nieces' application to enforce the proposed settlement. We now reverse and remand, concluding that the parties did not reach the necessary meeting of the minds.

The Chancery judge's oral decision, placed on the record after argument, first reviews the case's protracted history and "months and months of negotiations among counsel." The parties informed the judge several times that they had settled, but never sent her a stipulation, thus she directed the nieces to file a motion "to enforce a settlement." The judge next discussed various emails between counsel exchanging the written proposed agreement, as well as the agreement itself. Reading the language of the emails through the prism of agency law, she noted that Loughlin's attorney told his adversary and the

---

[1] Lynch does not appear to be involved in this appeal, and it is unclear from the record if she takes a position with regard to the settlement in dispute.

A-2718-19

administrator "I'll get back to you" after receiving a final draft of the agreement that included contested mutual releases between the sisters and the nieces.

The judge interpreted that final email to mean that "[t]here was nothing left open." The judge further concluded that since counsel was acting with apparent authority on Loughlin's behalf, "it is unequivocal that a settlement was reached and the mere fact that [Loughlin] changed her mind is of no moment. Her representative, her agent said it was done and it's done. This is four years into this litigation."[2]

On appeal, Loughlin challenges the enforcement order for these reasons:

POINT I

SINCE A SETTLEMENT AGREEMENT WAS NEVER FINALIZED, THE COURT CANNOT ENFORCE THE SETTLEMENT AGREEMENT[.]

POINT II

THE TRIAL COURT ERRED BY ENFORCING A SETTLEMENT THAT GAVE THE PARTIES A BETTER AGREEMENT THAN THEY NEGOTIATED[.]

We address only Loughlin's first point, as we do not find that the email exchange supports the judge's finding that Loughlin's agent gave final consent

---

[2] The judge deemed irrelevant the substitution of counsel between the last exchange of emails and Loughlin's defense of the motion to enforce a settlement.

on his client's behalf to the settlement draft. Accordingly, we do not reach the second point.

"[A]n attorney is presumed to possess authority to act on behalf of the client . . . ." Jennings v. Reed, 381 N.J. Super. 217, 231 (App. Div. 2005) (quoting Sur. Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582 (8th Cir. 1984)). However, settlements are governed by contract law and require assent to the essential terms to be valid. Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 438-39 (App. Div. 2016). Assent is evidenced by an offer of sufficiently definite terms and acceptance of those terms. GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 185 (2017) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)). "'In the very nature of the contract, acceptance must be absolute' and 'unequivocally shown.'" Cumberland Farms, 447 N.J. Super. at 439 (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953)). Once a settlement offer is made, the offeree holds the power of acceptance until the offer is terminated. Berberian v. Lynn, 355 N.J. Super. 210, 217 (App. Div. 2002).

Because settlement agreements are subject to contract law principles, we review a trial judge's interpretation and construction de novo. In Re Estate of Balk, 445 N.J. Super. 395, 400 (App. Div. 2016) (citing Kieffer v. Best Buy,

4

205 N.J. 213, 223 (2011)).  As always, a trial court's interpretation of the law and the legal conclusions that flow therefrom are not entitled to particular deference.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Our earlier unpublished opinion regarding this estate remanded for the court to include a particular significant account as a probate asset.  See In re Estate of McLaughlin, No. A-0441-16 (App. Div. Feb. 16, 2018) (slip op. at 2). This in the context of the nieces having failed to notify the sisters regarding his funeral arrangements or the appointment of an estate administrator.  Ibid.  The court-appointed administrator had taken the position that the disputed funds were a non-probate asset that passed directly to the nieces despite decedent's failure to specifically designate them on the account as the beneficiaries.  Id. at 5.  That is the backdrop within which we consider the various emails—the long-standing disputes between the parties.

Turning to the events occurring after the February 16, 2018 remand, drafts of a settlement proposal circulated late in 2018 into 2019, which did not initially include mutual releases.  When the matter was scheduled by the court in compliance with the remand, Loughlin's attorney requested a postponement so the parties could continue working on the settlement.

The nieces' attorney eventually informed the administrator and the sisters' attorney that mutual release language was missing from the draft agreement. Loughlin's attorney responded on February 25, 2019, that the administrator "wrote those releases into her revision," to which the nieces' attorney responded the next day, "I will discuss with [the administrator] so we can get this finalized."

On April 2, 2019, Loughlin's attorney then said, "I think [we have] addressed all of your concerns in the draft that last circulated. Is there anything else[,] or is this ready to go?" The judge found this indicated acceptance of the release provision. However, when the nieces' attorney's office forwarded the last version of the agreement on April 10, 2019, the accompanying email read "[a]ttached hereto please find the latest draft of the settlement agreement for your review."

These emails, to which the documents were attached, constituted offers and counteroffers, not unequivocal acceptance of anyone's proposal. They could not effectively form a contract. See State v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 612 (App. Div. 2006). From the series of exchanges, it does not appear there was ever more than counteroffers, requiring additional reviews and consents by each party. See Berberian v. Lynn, 355 N.J. Super. 210, 217 (App.

Div. 2002). Curiously, Loughlin's attorney never responded to the last draft he received. The record reveals no further communication between the parties from April 10, 2019, until the enforcement application was filed by the nieces in January 2020 at the direction of the court.[3] This delay is also inexplicable.

Even if the document forwarded by the nieces' attorney's office is characterized as a final counteroffer, as it included the releases which the administrator had initially added, that counteroffer would have expired given the substantial amount of time that elapsed before any action was taken on it. See Ernst & Young, L.L.P., 386 N.J. Super. at 612. There are questions of fact left open by the email chain. The issue should not have been decided without further proceedings and an adequately developed record.

If the April email is viewed as conveying a counteroffer, the power of acceptance was Loughlin's, who never exercised it. See Berberian, 355 N.J. Super. at 217. Thus, there was no enforceable settlement. Loughlin's attorney's April 10, 2019 email merely thanks counsel for providing another revision, stating that he would "get back to" the nieces' attorney. It is simply not a basis for a finding that a meeting of the minds had been reached and an enforceable

---

[3] At oral argument on appeal, the nieces' counsel represented that Loughlin's attorney was not responding to phone calls.

A-2718-19

agreement created. In light of the acrimonious ongoing litigation and the relatively modest size of the estate, we can understand everyone's motivation to end the matter. But no settlement was reached. We vacate the judge's order and remand the matter for further proceedings in accordance with this decision.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2718-19